IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FRANCIS D. JOHN,                    §
                                    §
            Plaintiff,              §
                                    §
v.                                  §        CIVIL ACTION NO. H-06-1716
                                    §
KEY ENERGY SERVICES, INC.,          §
                                    §
            Defendant.              §

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Francis D. John, brings this action against Key Energy Services, Inc. ("Key Energy") alleging breaches of contract arising out of John's termination as Chief Executive Officer and Chairman of the Board of Key Energy.[1] Pending before the court are Key Energy's Motion to Dismiss (Docket Entry No. 5), John's Motion to Dismiss counterclaims (Docket Entry No. 7), John's Response in Opposition to Defendant's Motion to Dismiss (Docket Entry No. 8), Key Energy's Reply in Support of its Motion to Dismiss (Docket Entry No. 10), Key Energy's Response to John's Motion to Dismiss Key Energy's Counterclaim (Docket Entry No. 11), and John's Sur-Reply in Opposition to Defendant's Motion to Dismiss (Docket Entry No. 12).  For the reasons explained below, Key Energy's Motion to Dismiss will be denied and John's Motion to Dismiss will be granted in part and denied in part.

---

[1]See Complaint, Docket Entry No. 1.

## I.  **Factual Allegations**

John's Complaint alleges that he served as President of Key Energy, an oilfield services company, from 1988 through 2003, as its Chief Executive Officer (CEO) from 1989 to mid-2004, and as its Chairman of the Board from 1996 to August 2004.  In late 1999 Key Energy added an information technology department and centralized its computer systems at more than 200 offices.  Key Energy's accounting and administrative departments grew from 25 employees to more than 170 employees.  In early 2004, as part of this process, Key Energy activated its centralized management maintenance computer system (CMMS).  CMMS allowed Key Energy to instantaneously track and monitor the fixed assets acquired through the expansion program.  By late March 2004, using the CMMS system, Key Energy and its auditors, KPMG, determined for the first time that Key Energy's fixed asset records were possibly inaccurate and that the carrying values of some of its assets were incorrectly stated.  Key Energy notified the public of this problem and of the possible need to restate prior years' financial data.

Key Energy launched a company-wide inventory and review of its fixed assets using the CMMS asset tracking system.  In conjunction with the investigation John resigned as Key's CEO in April of 2004 and as its Chairman of the Board in August of 2004.  John's resignation was the result of a negotiated agreement between John and Key Energy; it was not the result of a termination for cause pursuant to Section 5(a) of his Employment Agreement.  Pursuant to

-2-

his agreement to separate from Key Energy, John has since cooperated in several post-resignation matters, including Key Energy's internal investigation of the restatement issues and a Securities and Exchange Commission investigation into any potential wrongdoing by John.  To date, neither Key Energy nor the Securities and Exchange Commission have filed any legal action accusing John of wrongdoing in connection with the restatement or related matters.

John and Key Energy entered into the Third Amended and Restated Employment Agreement in December of 2003 (the "Employment Agreement"), which governs the benefits John would receive upon his termination.  During his tenure with Key Energy, John was also granted company stock options.  When John resigned from Key Energy Key Energy promised him that he would receive the amounts due under the Employment Agreement and all of his vested stock options.  John alleges that Key Energy has failed to pay him the benefits due and will not allow him to exercise his stock options.

In December of 2003 Key Energy approved the 2003 Long-Term Share Incentive Plan (the "2003 Plan"), which adopted resolutions awarding additional shares of stock to John if Key Energy met certain financial performance criteria.  John alleges that Key Energy has met those criteria but refuses to issue him the promised shares of stock.

Nearly two years after John resigned from Key Energy, Key Energy notified John that it intended to retroactively terminate

him for "cause" as defined in Section 5(a)(i)(B) of the Employment
Agreement.   John disputes this characterization, alleging that he
resigned based upon a negotiated agreement with Key Energy.   On
May 19, 2006, John filed suit against Key Energy for breach of the
Employment Agreement, breach of Stock Option Agreements, and breach
of the 2003 Plan.

## II.  <u>Standard of Review</u>

A Rule 12(b)(6) motion tests the formal sufficiency of the
pleadings and is "appropriate when a defendant attacks the
complaint because it fails to state a legally cognizable claim."
<u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001), <u>cert.</u>
<u>denied</u> <u>sub nom Cloud v. United States</u>, 122 S.Ct. 2665 (2002).   The
court must accept the factual allegations of the complaint as true,
view them in the light most favorable to the plaintiff, and draw
all reasonable inferences in the plaintiff's favor.   <u>Id.</u>   "[A]
court may dismiss a complaint only if it is clear that no relief
could be granted under any set of facts that could be proved
consistent with the allegations." <u>Swierkiewicz v. Sorema N.A.</u>, 122
S.Ct. 992, 998 (2002) (quoting <u>Hishon v. King & Spalding</u>, 104 S.Ct.
2229, 2232 (1984)).

> When a federal court reviews the sufficiency of a
> complaint, before the reception of any evidence either by
> affidavit or admissions, its task is necessarily a
> limited one.  The issue is not whether a plaintiff will
> ultimately prevail but whether the claimant is entitled
> to offer evidence to support the claims.

Id. at 997 (quoting Scheuer v. Rhodes, 94 S.Ct. 1683, 1686 (1974)).

See also Conley v. Gibson, 78 S.Ct. 99, 102 (1957) ("[A] complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

Nevertheless, a party seeking to avoid dismissal "must plead specific facts, not mere conclusory allegations." Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992). Complaints "'must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (2d ed. 1990)). While dismissal of a claim under Rule 12(b)(6) is generally disfavored, the court should exercise its power to dismiss a complaint if it lacks an allegation regarding an element required to obtain relief. Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995) (citations omitted).

Although federal law establishes the standards for 12(b)(6) dismissal, in a diversity case the court looks to Texas law and its choice of law principles in determining what state's law applies. Erie Railroad Co. v. Tompkins, 58 S.Ct. 817 (1938); General Accident Ins. Co. v. Unity/Waterford-Fair Oaks, Ltd., 288 F.3d 651, 653 (5th Cir. 2002).

### III.  **Defendant's Motion to Dismiss**

Key Energy has moved to dismiss Counts 1 and 4 of John's Complaint under Rule 12(b)(6) for failure to state a complaint upon which relief can be granted.[2]  Count 1 alleges breach of the Employment Agreement and Count 4 requests attorneys' fees.

Key Energy argues that because John's Complaint alleges that he "voluntarily resigned" from Key Energy, the Employment Agreement does not entitle John to any of the severance payments or benefits he seeks.[3]  Section 5(b) of the Employment Agreement states that "The Executive's employment under this Agreement may be terminated as follows and in no other way[.]"[4]  Section 5(b) then lists the ten ways in which John's employment can be terminated.[5]  Because John alleged that he voluntarily resigned, Key Energy argues that his resignation can only be termed as a section 5(b)(x) termination.  Section 5(b)(x) states

> The Executive may terminate his employment under this Agreement at any time other than pursuant to Sections 5(b)(vi), (vii), (viii) or (ix) hereof; *provided, however*, that if the Executive desires to terminate his employment pursuant to this Section 5(b)(x) (an "*Executive Voluntary Termination*"), he shall give the

---

[2]Key Energy's Motion to Dismiss, Docket Entry No. 5.

[3]The court may properly consider the Employment Agreement in the Rule 12(b)(6) motion because John attached it to his complaint. See <u>Travis v. Irby</u>, 326 F.3d 644, 648 (5th Cir. 2003).

[4]Employment Agreement, § 5(b), Exhibit A to John's Complaint, Docket Entry No. 1.

[5]<u>Id.</u>

Company not less than ninety (90) days' prior written notice of such termination.[6]

Section 5(e) governs the severance payment and provides that "[i]n the event the Executive's employment hereunder is terminated [sic] to Section 5(b)(i), (v), (ix) or (x) hereof, the Executive shall not be entitled to any additional severance compensation pursuant to this Section 5(e)."[7]  Section 5(f) addresses stock options, and states that unvested stock options are forfeited upon termination under section 5(b)(x).[8]  Section 5(g) governs "Continuation of Benefits" that John alleges he is owed in his Complaint.  Under section 5(g)(i), Continuation Benefits are available only if John is terminated under sections 5(b)(ii), (iii), (iv), (vi), (vii), or (viii), but not if John is terminated under section 5(b)(x).[9]

John responds that Key Energy incorrectly characterizes his resignation as falling under section 5(b)(x) of the Employment Agreement.  John argues that his resignation more properly falls under section 5(b)(vi).  This section states that "[t]he Executive may terminate his employment under this Agreement at any time for Good Reason effective upon his giving notice to the Company of such termination setting forth in reasonable detail the reasons for the

---

[6]_Id._ at § 5(b)(x).

[7]_Id._ at § 5(e)(iii).

[8]_Id._ at § 5(f)(ii).

[9]_Id._ at § 5(g)(i).

Executive's intention to terminate for Good Reason."[10]   The
Employment Agreement defines "Good Reason" to mean several listed
occurrences, including:

> (A) . . . failure of the Board to elect the Executive as
> Chairman of the Board and Chief Executive Officer of the
> Company, . . . or removal of the Executive from the Board
> . . . *provided* that such failure or removal is not in
> connection with a termination of the Executive's
> employment hereunder for Cause . . . and *provided further*
> that any notice of termination hereunder shall be given
> by the Executive within ninety (90) days of such failure
> or removal;
>
> (B) material change by the Company in the Executive's
> authority, functions, duties or responsibilities as
> Chairman of the Board and Chief Executive Officer of the
> Company . . . which would cause his position with the
> Company to become of less responsibility, importance,
> scope or dignity than his position as of the Commencement
> Date, *provided* . . . any notice of termination hereunder
> shall be given by the Executive within ninety (90) days
> of when the Executive becomes aware of such change;"[11]

John argues that his termination qualifies as a section 5(vi)
termination.   John's original Complaint, however, fails to allege
facts sufficient to establish a 5(vi) termination.   The original
Complaint states only that "John voluntarily resigned as Key's
Chief Executive Officer in April 2004 and as its Chairman in August
2004.   It is important to emphasize that John's resignation was the
product of a specifically negotiated agreement between John and the
Company, and **not** the result of a finding of Termination for 'Cause'
as set forth in Section 5(a) of his Employment Agreement[.]"[12]   John

---

[10]<u>Id.</u> at § 5(b)(vi).

[11]<u>Id.</u> at §§ 5(a)(vi)(A) & (B).

[12]Complaint, ¶ 10, Docket Entry No. 1.

-8-

does not allege that he was removed as Chairman of the Board or as Chief Executive Officer. Nor does John allege facts sufficient to establish that there was a material change in his authority, functions, duties, or responsibilities.

John has submitted a First Amended Complaint that includes such allegations and has requested leave to amend should the court determine that such an amendment is warranted.[13] Federal Rule of Civil Procedure 15(a) permits amendment of a pleading after a responsive pleading has been served with leave of court. The court should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). The First Amended Complaint alleges several facts not contained in the original Complaint that support characterizing John's resignation as occurring under section 5(vi). The court has examined John's First Amended Complaint and concluded that allowing the amendment would not be futile. Therefore, the court will grant John's motion for leave to amend, and consider the First Amended Complaint in analyzing Key Energy's motion to dismiss.

John's First Amended Complaint alleges in pertinent part that at an April 30, 2004, board meeting, Key Energy's Board of Directors voted to replace John as CEO.[14] John was informed of the

---

[13]First Amended Complaint, Exhibit 1 to John's Response in Opposition to Defendant's Motion to Dismiss, Docket Entry No. 8.

[14]First Amended Complaint, ¶ 10, Exhibit 1 to John's Response in Opposition to Defendant's Motion to Dismiss, Docket Entry No. 8.

vote, and was asked to voluntarily "step down" after being replaced and not to raise a controversy regarding his removal.[15]  The board members stressed to John that if he agreed to resign he would still receive all of his contractual benefits and stock options.[16]  John agreed to Key Energy's request that he step down without controversy in part because of this promise.[17]  John alleges that his resignation was the result of a specifically negotiated agreement between John and Key Energy.[18]  It was not the result of a finding of termination for "cause" as set forth in section 5(a) of the Employment Agreement, nor was it an "Executive Voluntary Termination" pursuant to section 5(b)(x) of the Employment Agreement.[19]  In August of 2004, after the conclusion of the audit committee's investigation, representatives of Key Energy approached John to finalize a settlement regarding his severance benefits.[20]  The parties once more reached a verbal agreement under which John would receive most of his benefits and options.[21]

These allegations suffice to establish that John was removed as CEO of Key Energy, and that he experienced a material change in

---

[15]Id.

[16]Id.

[17]Id.

[18]Id. at ¶ 11.

[19]Id. at ¶¶ 11 & 12.

[20]Id. at ¶ 12.

[21]Id.

circumstances causing his position to be one of less responsibility.  These two circumstances fall under subsections (A) and (B) of the definition of "Good Reason" in the Employment Agreement.[22]  Key Energy argues, however, that John's First Amended Complaint still fails for two reasons:  first, because John has not specifically alleged that his termination was pursuant to section 5(b)(vi) of the Employment Agreement and second, because John has not alleged that he gave the ninety-day notice required for Good Reason section 5(b)(vi) termination.

Although the First Amended Complaint does not directly allege that the termination was pursuant to section 5(b)(vi) of the Employment Agreement, such specificity is not required to survive a Rule 12(b)(6) motion to dismiss.  On a Rule 12(b)(6) motion, a complaint is liberally construed and all reasonable inferences are drawn in the light most favorable to the plaintiff.  <u>Woodard v. Andrus</u>, 419 F.3d 348, 351 (5th Cir. 2005).  The court can infer from John's allegations of the facts surrounding his termination that his termination was pursuant to section 5(b)(vi) of the Employment Agreement.

Key Energy's second argument, regarding the ninety-day notice provision, is also unavailing.  The definition of "Good Reason" in the Employment Agreement, as recited above, requires that any

---

[22]Employment Agreement, §§ 5(a)(vi)(A) & (B), Exhibit A to John's Complaint, Docket Entry No. 1.

notice of termination be given by John within 90 days of either his removal as CEO or the material change in circumstance.[23]   John did not allege that he gave the ninety-day notice required by both section 5(a)(vi)(A) and (B).   In fact, John concedes that he did not give the ninety-day notice.[24]   John argues that whether such notice was given is irrelevant under the Employment Agreement because the Employment Agreement states:

> In the event that the Executive's employment hereunder terminates: . . . for any reason after the Company has given a notice pursuant to Section 5(b)(iii) or (iv) hereof or the Executive has or could have given a notice pursuant to Section 5(b)(vi) hereof, then such termination shall be conclusively deemed to have occurred pursuant to such Section 5(b)(iii), (iv) or (vi) hereof, as applicable, for all purposes of this Agreement[.][25]

Under this provision, if John could have given notice pursuant to section 5(b)(vi), the termination is deemed to have occurred pursuant to section 5(b)(vi).   Thus, even if John did not give ninety days' notice, his termination could still be characterized as a 5(b)(vi) termination for Good Reason.   The court therefore concludes that John's termination could fall under section 5(b)(vi) instead of 5(b)(x), and that John has stated a legally cognizable claim for breach of contract.

---

[23]Employment Agreement, §§ 5(a)(vi)(A) & (B), Exhibit A to John's Complaint, Docket Entry No. 1.

[24]Plaintiff's Sur-Reply in Opposition to Defendant's Motion to Dismiss, p. 2, Docket Entry No. 12.

[25]Id. at § 5(b).

Key Energy also moves to dismiss John's fourth count, for "Attorneys Fees" under Rule 12(b)(6). The court agrees with Key Energy that there is no cause of action for "Attorneys Fees." John's First Amended Complaint, however, does not contain Count 4 of the original Complaint, which sought attorney's fees. Defendant's Motion to Dismiss Count 4 is therefore moot.

### IV. <u>Plaintiff's Motion to Dismiss Defendant's Counterclaims</u>

Key Energy brings two counterclaims against John for breach of contract and declaratory judgment based on John's voluntary termination, two counterclaims for breach of contract and declaratory judgment against John based on John's termination for cause, and one counterclaim for declaratory judgment regarding John's stock options based on his termination for cause.[26] John moves to dismiss counterclaims one, two, and three in their entirety, and four and five to the extent they purport to seek costs, attorney's fees and expenses as damages.[27]

John argues that counterclaims one and two should be dismissed because Key Energy simultaneously alleges two contrary fact patterns: In counterclaims one and two, Key Energy alleges that John voluntarily resigned his employment pursuant to Section 5(b)(x) of the Employment Agreement; while in counterclaims three,

---

[26]Key Energy's Answer and Counterclaim, § 2, Docket Entry No. 6.

[27]John's Motion to Dismiss, Docket Entry No. 7.

four, and five, Key Energy alleges that John was terminated for
cause pursuant to section 5(b)(1) and section 6.6(b) of the 1997
Plan (regarding stocks and stock options).  John argues that the
conflict between Key Energy's counterclaims amounts to simul-
taneously alleging two contrary fact patterns.

Federal Rule of Civil Procedure 8(e)(2) permits a party to
"set forth two or more statements of a claim or defense alternately
or hypothetically, either in one count or defense or in separate
counts or defenses."  Neither party disputes that alternate legal
theories are permissible under Rule 8(e)(2).  But John charac-
terizes Key Energy's pleadings as asserting alternate factual
predicates, and asserts that this is impermissible pleading
gamesmanship.

The court has examined the pleadings and concludes that they
do not necessarily allege conflicting facts.  Whether John's
resignation was voluntary or for cause is a legal conclusion.  The
factual allegations on which Key Energy seeks to base its legal
conclusions are not necessarily alternate factual predicates.  Key
Energy's first and second counterclaim do not incorporate all of
John's pleadings.  Rather, they state as follows:  "John alleges in
¶ 10 of his Complaint that he 'voluntarily resigned as Key's Chief
Executive Officer in April 2004.'  In ¶¶ 19, 20, and 23 of his
Complaint, John repeats his allegation that he voluntarily
resigned.  This first counterclaim is based on John's own

-14-

allegations without regard to their accuracy."[28]    Reading this
pleading in the light most favorable to Key Energy, it does not
incorporate all of John's allegations in paragraphs 10, 19, 20, and
23 of his Complaint, but rather incorporates only John's allegation
that he voluntarily resigned.    This does not conflict with Key
Energy's allegation that it terminated John for cause.    In fact,
Key Energy incorporates John's alleged voluntary resignation into
counterclaim three, a breach of contract action based on John's
termination for cause.   Key Energy alleges that John was terminated
for cause and terms John's "voluntary resignation" an anticipatory
repudiation of his obligation to repay his Retention Incentive
Bonus.    The characterization of John's termination under the
Employment Agreement is a legal determination, and the different
characterizations of the termination do not rely on self-
contradictory facts.    Although Key Energy cannot recover on two
inconsistent legal theories, it may plead them at this stage of the
litigation.    The court therefore declines to dismiss Key Energy's
counterclaims on this ground.

John also argues that Key Energy's counterclaims should be
dismissed because they are based on allegations in John's Complaint
that John did not actually make.    Specifically, John argues that
Key Energy's first and second counterclaims are misleading because

---

[28]Key Energy's Answer and Counterclaim, § 2 ¶ 12, Docket Entry
No. 6.   See also id. at § 2 ¶ 19.

John never alleged that he voluntarily resigned pursuant to section 5(b)(x) of the Employment Agreement.  But Key Energy does not rely on John's complaint to allege that the termination was pursuant to section 5(b)(x).  Key Energy relies on John's Complaint only for the fact that he voluntarily resigned as Key's CEO.  Despite John's arguments, there is nothing improper about two parties characterizing the same set of allegations differently.  Key Energy can incorporate some of John's allegations into its pleading and construe these allegations as invoking section 5(b)(x) of the Employment Agreement, while John can construe them as invoking section 5(b)(vi) of the Employment Agreement.

John also argues for dismissal of counterclaims one and two because Key Energy never affirmatively alleges that John voluntarily resigned.  Counterclaim one is a breach of contract action based on John's allegation that he voluntarily resigned as Key's Chief Executive Officer in April of 2004.[29]  Counterclaim two is a declaratory judgment action for stock options also based on John's allegations that he voluntarily resigned.[30]  Key Energy's counterclaims incorporate the allegations in John's Complaint that he voluntarily resigned "without regard to their accuracy."[31]

---

[29]Key Energy's Answer and Counterclaim, § 2 ¶¶ 10-17, Docket Entry No. 6.

[30]Id. at § 2 ¶¶ 18-22.

[31]Id. at § 2 ¶¶ 12 & 19.

-16-

A complaint is inadequate under Rule 8(a) of the Federal Rules of Civil Procedure if it fails (1) to provide notice of circumstances that give rise to the claim or (2) to set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist. Beanal v. Freeport-McMoran, Inc., 197 F.3d 161, 164 (5th Cir. 1999).

Key Energy's first and second counterclaims provide notice of the circumstances giving rise to the claim and set forth sufficient information to outline the elements of the claim. John has cited to no provision in the Federal Rules of Civil Procedure that prohibits Key Energy from quoting John's Complaint to establish the factual predicate rather than alleging it independently in the counterclaim. The court therefore will deny John's motion to dismiss Key Energy's first and second counterclaims.[32]

John next argues that counterclaim three should be dismissed because all of the conditions precedent to recovery have not yet occurred. In counterclaim three Key Energy seeks repayment of eighty percent of John's $13,079,662 retention bonus because John

---

[32]The court is nevertheless concerned about whether Key Energy can continue to base its counterclaims on John's allegations in light of John's First Amended Complaint, which makes it clear in paragraph 10 that John's termination was not an "Executive Voluntary Termination" pursuant to section 5(b)(x) of the Employment Agreement. Should Key Energy persist in alleging these counterclaims and basing the factual predicate on John's Amended Complaint, it should be prepared to explain how it can satisfy the requirements of Rule 11(b)(3) as incorporated in Rule 8(e)(2).

was terminated for cause prior to June 30, 2004.[33]  Section 2(d) of
the Employment Agreement states that if John is terminated prior to
June 30, 2004, for cause pursuant to section 5(b)(i), he must repay
eighty percent of his retention bonus to Key Energy.[34]  John argues
that this request for relief is not yet ripe because no court of
competent  jurisdiction  has  made  any  findings  that  John  was
terminated  for  cause.   John  cites  section  2(d)  of  the  Employment
Agreement, which provides that

> [f]or purposes of this Section 2(d), the Executive shall
> not be deemed to have been terminated pursuant to Section
> 5(b)(i) hereof  unless  and  until  a  court  of  competent
> jurisdiction  has  found,  in  a  final  and  nonappealable
> decision, that there was, in fact, clear and convincing
> evidence  that  the  Cause  specified  by  the  Board  in
> connection with such termination actually existed.[35]

Were this court to adopt John's argument, Key Energy would have to
litigate two lawsuits:  one to obtain the cause finding by clear
and  convincing  evidence  and  a  second  seeking  return  of  eighty
percent of the retention bonus.   This result is both nonsensical
and not dictated by the Employment Agreement.

   Key Energy has also alleged a counterclaim against John for
declaratory judgment, seeking a declaration that there is clear and
convincing evidence that the cause specified by Key Energy's board

---

[33]Key Energy's Answer and Counterclaim, § 2 ¶¶ 23-28, Docket
Entry No. 6.

[34]Employment Agreement, § 2(d), Exhibit A to John's Complaint,
Docket Entry No. 1.

[35]<u>Id.</u>

in connection with John's termination for cause actually existed.[36]
Under section 2(d) of the Employment Agreement, in order to receive
return of any portion of the retention bonus Key Energy would have
to prevail on its counterclaim in this court and on appeal.  This
requirement does not preclude Key Energy from asserting both the
declaratory judgment action to obtain a for cause finding and the
breach of contract action seeking the return of the retention bonus
in the same proceeding.  Key Energy is seeking the necessary
finding to enable it to obtain return of the retention bonus, and
the court will not require two lawsuits for it to do so.  Indeed,
it would be duplicative and wasteful of judicial resources to
require two separate lawsuits.

John further argues that even if the court does have
jurisdiction over counterclaim three, the court should dismiss it
under Rule 12(b)(6) because Key Energy has failed to allege that
all conditions precedent to recovery have occurred.  Key Energy's
counterclaim generally alleges that it had "performed all its
contractual obligations and satisfied all conditions precedent."[37]
A general averment that all conditions precedent have been
performed is sufficient.  Fed. R. Civ. P. 9(c).  The court will
therefore not dismiss counterclaim three on this basis.

---

[36]Key Energy's Answer and Counterclaim, § 2 ¶ 33, Docket Entry
No. 6.

[37]Key Energy's Answer and Counterclaim, § 2 ¶¶ 11 & 29, Docket
Entry No. 6.

John also moves to dismiss Key Energy's second, fourth, and fifth counterclaims to the extent that they seek attorney's fees, costs, and expenses.   John argues that the Federal Declaratory Judgment Act does not authorize an award of attorney's fees, costs, or expenses, and that the Texas Declaratory Judgment Act, which does permit them, is not applicable in federal court under Erie principles.   Key Energy counters that John's Employment Agreement is governed by Pennsylvania, not Texas law.   Key Energy also argues that Pennsylvania law allows recovery of attorney's fees in declaratory judgment actions.   According to Key Energy, this is a substantive, not procedural part of Pennsylvania law, and therefore federal courts apply Pennsylvania law on this issue.

Key Energy's declaratory judgment actions do not state whether they are pursuant to the Federal Declaratory Judgment Act, the Texas Declaratory Judgment Act, or the Pennsylvania Declaratory Judgment Act.   The Federal Declaratory Judgment Act, 28 U.S.C. § 2202, does not authorize an award of costs, fees, or expenses. See Travelers Indem. Co. v. Citgo Petroleum Corp., 166 F.3d 761, 772 (5th Cir. 1999).   Although the Texas Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.009, permits recovery of attorney's fees and costs, the Fifth Circuit has held that under Erie principles the Texas Declaratory Judgment Act is procedural and thus not applicable in federal court.   Camacho v. Texas Workforce Com'n, 445 F.3d 407, 413 (5th Cir. 2006).

Even assuming, <u>arguendo</u>, that Pennsylvania law applies to the issue of attorney's fees in the declaratory judgment actions, Key Energy would not be entitled to attorney's fees, costs, or expenses in its declaratory judgment counterclaims.  Pennsylvania law only permits recovery of attorney's fees in declaratory judgment actions in a narrow class of cases.  <u>Mosaica Academy Charter School v. Com. Dept. of Educ.</u>, 813 A.2d 813, 824-25 (Pa. 2002).  Attorney's fees are recoverable only as supplemental relief "to effectuate the declaratory judgment" pursuant to section 7538 of the Pennsylvania Declaratory Judgments Act, but not as "ancillary relief."  <u>Id.</u> at 824.  <u>See also</u> 42 Pa.C.S. § 7538.  Pennsylvania courts have approved awards of attorney's fees in cases where an insured is compelled to bring a declaratory judgment action to establish his insurer's duty to defend an action brought by a third party and the insurer has acted in bad faith in refusing to defend the insured.  <u>See, e.g.</u>, <u>Kelmo Enterprises Inc. v. Commercial Union Ins. Co.</u>, 426 A.2d 680, 685 (Pa. Super. 1981).

Key Energy has not cited any authority for the proposition that Pennsylvania law permits recovery of attorney's fees and costs in <u>any</u> declaratory judgment action.  Moreover, the case cited by Key Energy does not support such a broad proposition.  <u>See First State Underwriters Agency of New England Reinsurance Corp. v. Travelers Ins. Co.</u>, 803 F.2d 1308, 1318 (3d Cir. 1986) (finding that neither the plaintiff nor one of the defendants was entitled

-21-

to recover its attorney's fees in a declaratory judgment action concerning rights and liabilities under insurance policies because there was no finding of bad faith as required by Pennsylvania law). Nor does the court's own reading of Pennsylvania law support such a broad interpretation.  A Pennsylvania Superior Court has noted that Kelmo and the line of holdings following Kelmo "emphasize[] that only the rather limited circumstances of an insurer's unreasonable and bad faith refusal to defend and indemnify require awarding attorneys' fees to effectuate a declaratory judgment." Regis Ins. Co. v. Wood, 852 A.2d 347, 351 (Pa. Super. 2004).  See also Precision Door Co., Inc. v. Meridian Mut. Ins. Co., 353 F.Supp.2d 543, 556-67 (E.D. Pa. 2005) (making an Erie guess that Pennsylvania's highest court would follow the reasoning of the Regis court and limit the application of Kelmo to a limited group of declaratory judgment actions).

This case involves contractual disputes regarding executive termination and compensation.  The court concludes that Key Energy cannot recover attorney's fees, expenses, or costs on second, fourth, and fifth counterclaims for declaratory judgment.

## V.  Conclusions and Order

For the foregoing reasons, the court orders that

1.    John's Motion to Amend his Complaint (Docket Entry No. 8) is **GRANTED**;

-22-

2.    Key Energy's Motion to Dismiss (Docket Entry No. 5) is **DENIED**; and

3.    John's Motion to Dismiss Counterclaims (Docket Entry No. 7) is **GRANTED** with respect to the claim for attorney's fees, costs, and expenses in Key Energy's second, fourth, and fifth counterclaims and **DENIED** for counterclaims one and three and for the remainder of counterclaim two.

**SIGNED** at Houston, Texas, on this 8th day of August, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE